**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DASH MEDICAL GLOVES, INC., ) <br> ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DIGITCARE CORPORATION, ) <br> ) <br> ) <br> Defendant. ) | Case No.   1:14-cv-8438 <br><br> JUDGE _____ <br><br> JURY TRIAL REQUESTED |

**COMPLAINT**

Plaintiff DASH MEDICAL GLOVES, INC. ("Dash Medical") brings this action against Defendant DIGITCARE CORPORATION ("Digitcare") for injunctive relief and damages as follows.

**INTRODUCTION**

1.   In August 2007, Dash Medical started using the mark BLACK MAXX in connection with examination gloves.  Defendant Digitcare, a competitor of Dash Medical, also supplies examination gloves, and it adopted and continued to use the designation BLACK MAX despite having actual knowledge of Dash Medical's prior rights.  Dash Medical has spent significant sums of money in marketing, advertising, and promoting its BLACK MAXX mark, and in this lawsuit, Dash Medical seeks to protect its valuable BLACK MAXX mark from Digitcare's willful infringement, and to prevent the public confusion caused by Digitcare's conduct.

**THE PARTIES**

2. Plaintiff Dash Medical is a Wisconsin corporation with its principal place of business at 9635 South Franklin Drive, Franklin, Wisconsin 53132. Dash Medical is a major supplier of high quality, disposable latex and synthetic examination gloves used in various industries, including the medical, dental, and commercial industries.

3. Defendant Digitcare Corporation is a California corporation with its principal place of business at 3304 Pico Boulevard, Santa Monica, California 90405, doing business in Illinois, including in this Judicial District and Division, through its distributor MMS, A Medical Supply Company ("MMS"), which maintains an office in West Chicago, Illinois. Digitcare offers competing latex, synthetic, sterile, and non-sterile examination and specialty gloves.

**NATURE OF THE ACTION**

4. Dash Medical owns the exclusive rights to the mark BLACK MAXX in connection with medical examination gloves. In particular, Dash Medical owns U.S. Trademark Registration No. 4,087,006 for the mark BLACK MAXX. A copy of the registration certificate is attached hereto as Exhibit A.

5. Digitcare has marketed and sold examination gloves under the designation BLACK MAX through its website at www.digitcare.net (the "Digitcare Website") and print and electronic advertising, and it markets and sells gloves under the designation BLACK MAX through its national and regional distributors in the United States, including in this Judicial District and Division.

6. This Action arises out of Digitcare's knowing and willful infringement of Dash Medical's trademark rights. This is a civil action against Digitcare for willful trademark

infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125; deceptive trade practices under 815 ILCS 505/1, *et seq.*; and unfair competition under Illinois common law.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, and supplemental jurisdiction over the claims arising under the statutory and common law of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy.

8. The exercise of personal jurisdiction by this Court over Digitcare is appropriate in this instance pursuant to the Illinois long arm statute, 735 Ill. Comp. Stat. 5/2-209 *et seq.*, and such an assertion is in accordance with the Due Process Clause of the Fourteenth Amendment of the United States Constitution because, among other things, Digitcare has purposefully availed itself of the benefits of doing business in the State of Illinois by advertising and promoting goods to the residents of Illinois, including via its distributor that maintains an office at 1555 Hawthorne Lane, Suite 1W, West Chicago, Illinois 60185, and by causing injury to Dash Medical within Illinois.

9. This Court has personal jurisdiction over Digitcare because Digitcare transacts business in this District and has more than sufficient contacts with this District. Digitcare markets and sells its examination gloves under the BLACK MAX designation through its Digitcare Website, which is accessible by and targets residents of Illinois and this District and Division. As a result, Digitcare has purposefully availed itself of the benefits of doing business

3

in Illinois by actually transacting business in Illinois, and Digitcare can reasonably anticipate being haled into court in Illinois.

10. On information and belief, Digitcare has made actual sales of products bearing the BLACK MAX designation into the State of Illinois and this District and Division.

11. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §§ 1391(b) and (c).

## FACTS COMMON TO ALL COUNTS

12. Founded in 1998, Dash Medical is a nationwide supplier of high-quality, disposable latex and synthetic examination gloves serving various industries, including medical, dental, safety, automotive, laboratory, police and fire, correctional, food service, general industry, childcare, and healthcare. In addition to glove products, Dash Medical supplies procedural masks, patient towels and bibs, germicidal wipes, and other related products.

13. In August 2007, Dash Medical began selling examination gloves under the BLACK MAXX mark and continues to do so today.

14. Since 2007, Dash Medical has continuously used the BLACK MAXX mark in connection with examination glove products. During this period, the BLACK MAXX mark and reputation have continuously grown throughout the relevant industries and are now well-known throughout the United States as a source of origin in Dash Medical for these goods.

15. Dash Medical has spent a considerable amount of money over the past several years establishing the BLACK MAXX trademark in the minds of customers as a source of high-quality examination gloves.

16. Today, the BLACK MAXX mark has become associated in the minds of purchasers with Dash Medical as one of the largest and most reputable suppliers of high-quality examination gloves.

17. Dash Medical's BLACK MAXX mark was registered on the Principal Register of the United States Patent and Trademark Office on January 17, 2012. The registration covers "Medical examination gloves" and claims a date of first use of August 16, 2007. *See* Exhibit A.

18. Dash Medical's registration of BLACK MAXX on the Principal Register is *prima facie* evidence of the validity of the registered mark and Dash Medical's exclusive right to use the registered mark in commerce on or in connection with the goods specified in the registration.

19. In approximately 2011, Dash Medical learned that, long after Dash Medical first started using the BLACK MAXX mark and developed goodwill and consumer recognition in that mark, Digitcare had adopted the designation BLACK MAX in connection with examination gloves.

20. Digitcare markets and sells its BLACK MAX examination gloves through the Digitcare Website, print and electronic advertising, and national and regional distributors. Examples of Digitcare's use of the name BLACK MAX in connection with examination gloves are attached hereto as Exhibit B.

21. Digitcare's distributor, MMS, maintains an office location at 1555 Hawthorne Lane, Suite 1W, West Chicago, Illinois 60185, through which Digitcare's products are marketed and sold. Printouts from MMS' website at www.mmsmedical.com showing advertisement of the infringing products are attached hereto as Exhibit C.

22. On June 8, 2011, Dash Medical placed Digitcare on notice of its rights in the BLACK MAXX mark. The parties corresponded throughout the remainder of 2011. Digitcare has never disputed Dash Medical's prior rights to its mark.

23. On or about May 12, 2014, Dash Medical learned that a customer of Dash Medical contacted a retailer named Lakeland Supply to order a box of Dash Medical's BLACK MAXX gloves. When an employee at Lakeland Supply tried to order the gloves, it saw Digitcare's gloves sold under the BLACK MAX designation and was so unsure about whether Digitcare's product was the same as Dash Medical's product that it contacted Dash Medical to address the issue.

24. At that time, Dash Medical became aware that Digitcare had continued to sell its examination gloves under the BLACK MAX designation, despite having knowledge of Dash Medical's rights in the BLACK MAXX trademark, and that such sales were now leading to at least one instance of actual confusion with Dash Medical's registered trademark. Dash Medical again contacted Digitcare and demanded that it cease its infringing use, but Digitcare continues to sell the infringing products.

25. Digitcare's BLACK MAX designation is confusingly similar to Dash Medical's federally registered BLACK MAXX trademark, and Digitcare's continued use of the BLACK MAX designation constitutes an intentional and willful attempt by Digitcare to (i) trade on the goodwill associated with the BLACK MAXX trademark, (ii) free-ride on the well-known BLACK MAXX trademark, and (iii) divert customers and potential customers away from Dash Medical and instead to Digitcare, a competitor selling identical products under a nearly identical name. Digitcare's conduct has confused and deceived, and is likely to confuse and deceive,

consumers as to whether Dash Medical authorized, endorsed, or is otherwise affiliated with Digitcare and its use of the BLACK MAX designation.

26. Digitcare's acts complained of herein have been without Dash Medical's authorization or consent.

27. Digitcare's acts complained of herein have caused, and will continue to cause, irreparable injury to Dash Medical's business, goodwill, and reputation, as well as pecuniary damages to Dash Medical.

28. Digitcare's acts complained of herein have been willful and malicious.

## COUNT I
## TRADEMARK INFRINGEMENT - 15 U.S.C. § 1114(1)

29. Dash Medical realleges and incorporates by reference Paragraphs 1 through 28 as though fully set forth herein.

30. Digitcare's conduct as aforesaid constitutes trademark infringement in violation of 15 U.S.C. § 1114(1).

31. Digitcare's conduct as aforesaid has resulted in detrimental financial impact to Dash Medical.

32. Digitcare's conduct as aforesaid has been committed knowingly and in bad faith and has caused great and irreparable injury to Dash Medical, and such irreparable injury will continue unless and until Digitcare is preliminary and permanently enjoined from further violation of Dash Medical's rights, for which Dash Medical has no adequate remedy at law.

## COUNT II
## FALSE DESIGNATION OF ORIGIN – 15 U.S.C. § 1125(a)(1)(A)

33. Dash Medical realleges and incorporates by reference Paragraphs 1 through 32 as though fully set forth herein.

34. Digitcare's conduct as aforesaid has caused, and will continue to cause, confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Digitcare, and to cause confusion as to the origin, sponsorship, or approval of Digitcare's BLACK MAX designation in violation of 15 U.S.C. § 1125(a)(1)(A).

35. Digitcare's conduct as aforesaid has resulted in detrimental financial impact to Dash Medical.

36. Digitcare's conduct as aforesaid has been committed knowingly and in bad faith and has caused great and irreparable injury to Dash Medical, and such irreparable injury will continue unless and until Digitcare is preliminary and permanently enjoined from further violation of Dash Medical's rights, for which Dash Medical has no adequate remedy at law.

## COUNT III
## FALSE ADVERTISING – 15 U.S.C. § 1125(a)(1)(B)

37. Dash Medical realleges and incorporates by reference Paragraphs 1 through 36 as though fully set forth herein.

38. By virtue of Digitcare's use of the BLACK MAX designation in connection with examination gloves, consumers have been, and will continue to be, misled and deceived into believing that Digitcare's BLACK MAX products are authorized by, endorsed by, or otherwise affiliated with Dash Medical when they are not.

39. Digitcare knew or should have known that the representations made through the Digitcare Website, its print and electronic advertising, and its distributors were false or likely to mislead. The complained of acts of Digitcare constitute false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

40. Digitcare's conduct as aforesaid has resulted in detrimental financial impact to Dash Medical.

8

41. Digitcare's conduct as aforesaid has been committed knowingly and in bad faith and has caused great and irreparable injury to Dash Medical, and such irreparable injury will continue unless and until Digitcare is preliminary and permanently enjoined from further violation of Dash Medical's rights, for which Dash Medical has no adequate remedy at law.

## COUNT IV
## ILLINOIS DECEPTIVE TRADE PRACTICES ACT – 815 ILCS 510/1 *et. seq.*

42. Dash Medical realleges and incorporates by reference Paragraphs 1 through 41 as though fully set forth herein.

43. Digitcare's conduct as aforesaid has caused, and will continue to cause, a likelihood of confusion or misunderstanding as to the sponsorship, approval, affiliation, or connection of Dash Medical's and Digitcare's businesses, inasmuch as it gives rise to the incorrect belief that Digitcare's business has some connection with Dash Medical.

44. Digitcare's conduct as aforesaid constitutes deceptive trade practices in the course of Digitcare's business in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*

45. Digitcare's conduct as aforesaid has resulted in detrimental financial impact to Dash Medical.

46. Digitcare's conduct as aforesaid has been committed knowingly and in bad faith and has caused great and irreparable injury to Dash Medical, and such irreparable injury will continue unless and until Digitcare is preliminary and permanently enjoined from further violation of Dash Medical's rights, for which Dash Medical has no adequate remedy at law.

## COUNT V
## ILLINOIS COMMON LAW UNFAIR COMPETITION

47. Dash Medical realleges and incorporates by reference Paragraphs 1 through 46 as though fully set forth herein.

48. Digitcare's conduct as aforesaid has confused and deceived, and will continue to confuse and deceive, consumers as to whether Dash Medical authorized, endorsed, or is otherwise affiliated with Digitcare and its use of the BLACK MAX designation. Digitcare knew or should have known that the representations made through the Digitcare Website, its print and electronic advertising, and its distributors were false or likely to mislead.

49. Digitcare's conduct as aforesaid constitutes infringement and misappropriation of Dash Medical's common law rights in its BLACK MAXX trademark in violation of the common law of the State of Illinois.

50. Digitcare's conduct as aforesaid has resulted in detrimental financial impact to Dash Medical.

51. Digitcare's conduct as aforesaid has been committed knowingly and in bad faith and has caused great and irreparable injury to Dash Medical, and such irreparable injury will continue unless and until Digitcare is preliminary and permanently enjoined from further violation of Dash Medical's rights, for which Dash Medical has no adequate remedy at law.

## DEMAND FOR JURY TRIAL

52. Pursuant to Fed.R.Civ.P. 38(b), Dash Medical hereby demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

53. WHEREFORE, Dash Medical prays for the following relief:

A. Preliminary and permanently enjoin Digitcare, its agents, representatives, employees, assigns, suppliers, and distributors, and all persons acting in concert or privity with Digitcare from infringing Dash Medical's federally registered BLACK MAXX trademark, from using any name, mark, or domain name that is likely to cause confusion, to cause mistake, or from otherwise infringing Dash Medical's BLACK MAXX trademark, and from false designation of origin or falsely advertising or competing unfairly with Dash Medical by misleading or confusing consumers as to the authorization, endorsement, or affiliation by Dash Medical of Digitcare's BLACK MAX products;

B. Direct the immediate destruction of all products, labels, signs, packages, wrappers, advertisements, websites, social media sites, promotions, and all other matter in the custody or under the control of Digitcare, or its suppliers or distributors, that bear the BLACK MAX designation or any other designation that is likely to be confused with Dash Medical's BLACK MAXX trademark;

C. Order Digitcare to undertake corrective advertising to remedy any erroneous impression persons may have as to whether any goods provided by or promoted by Digitcare are authorized by Dash Medical or affiliated in any way with Dash Medical, its products or services, including without limitation the placement of corrective advertising and providing written notice to the public;

D. Award Dash Medical its damages and Digitcare's profits for all products sold dating from Digitcare's first sale of products under the BLACK MAX designation to the date of destruction of said products, together with a certified accounting of all such sales, including the names and addresses of all customers, dealers, retailers, and other parties to whom the infringing products were sold or distributed;

E. Award Dash Medical statutory damages as provided by law;

F. Award Dash Medical treble damages as provided by law;

G. Award Dash Medical its reasonable attorney fees, prejudgment interest, and the costs of this action as provided by law; and

H. Award Dash Medical any and all further relief that the Court deems fair and just.

Respectfully submitted,

DASH MEDICAL GLOVES, INC.

Date: October 27, 2014 By: /s/ Julianne M. Hartzell
Marsha K. Hoover
mhoover@marshallip.com
Julianne M. Hartzell
jhartzell@marshallip.com
Craig A. Beaker
cbeaker@marshallip.com
MARSHALL, GERSTEIN & BORUN LLP
233 South Wacker Drive
6300 Willis Tower
Chicago, IL 60606-6357
(312) 474-6300

*Attorneys for Plaintiff*
*Dash Medical Gloves, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2014, a true and correct copy of the foregoing was filed with the U.S. District Court for the Northern District of Illinois. The foregoing COMPLAINT, including EXHIBITS A through C, was served via electronic mail and regular mail on counsel for Defendant:

Michael T. Sun
tsewen@aol.com
Law Offices of Michael T. Sun
3304 West Pico Boulevard, Suite D
Santa Monica, California 90405

                                            /s/ Julianne M. Hartzell
                                                Julianne M. Hartzell